UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
UNITED STATES OF AMERICA           )
                                   )
    v.                             )   CR. No. 13-145 S
                                   )
MOMOH FAHNBULLEH,                  )
                                   )
        Defendant.                 )
_____)

**OPINION AND ORDER**

WILLIAM E. SMITH, Chief Judge.

The Defendant faces charges for being a felon in possession of a firearm. Before the Court are Defendant's Motion to Suppress (ECF No. 19), Motion to Suppress Evidence and Request for Franks Hearing (ECF No. 20) and Motion to Suppress Fruit of Illegal Arrest (ECF No. 22). These motions are DENIED.

I.  Background and Travel

On May 28, 2014, the Court held an evidentiary hearing in this matter. The sole witness to testify on behalf of the government was Detective Patrick Potter ("Potter") of the Providence Police Department ("PPD"). Potter testified that he has worked for the PPD for approximately ten years and has worked in the area of narcotics and organized crime for the past six years, investigating hundreds of cases.

Potter's involvement in this case began in September 2013 when he received a tip from a confidential informant ("CI") that

an African American male and female were using the first and second floor apartments of 110/112 Academy Avenue in Providence, Rhode Island to distribute cocaine.[1] The CI also identified a vehicle used by both suspects. The CI stated he had been in the second floor apartment while another individual purchased narcotics from the two suspects and that during the transaction the female suspect carried narcotics and sale proceeds between the first and second floor apartments. Potter testified that he had worked extensively with this CI for four years and the CI had never given intentionally false or misleading information.

Potter followed up by conducting "sporadic" surveillance of the residence and identified Ebony Cole ("Cole"), a subject familiar to Potter, on the porch of 110/112 Academy Avenue. Potter also observed a vehicle matching the description provided by the CI and traced its license plate to Defendant. Potter then obtained photographs of Defendant and Cole, which Potter showed to the CI, who in turn confirmed that they were the individuals selling cocaine from 110/112 Academy Avenue.

Potter's investigation connected Defendant and Cole to 110/112 Academy Avenue in various ways. Potter conducted a

---

[1] Potter testified that the layout of 110/112 Academy Avenue is typical of multi-family buildings in Providence. The first floor apartment has its own address – 112 Academy Avenue – and its own front door. The second and third floor apartments share both the 110 Academy Avenue address and a common front door. This opinion refers generally to 110/112 Academy Avenue but specifies the particular apartment when necessary.

utility check which revealed that Cole was listed as the tenant in the first floor apartment. A check of the PPD computers revealed that Defendant's brother had been shot and killed at that location in 2012; Cole's brother was also found to have been arrested previously at the same address. Potter conducted criminal history checks on Defendant and Cole and found both to have multiple prior arrests, including a prior gun charge for Defendant and a possession of marijuana charge for Cole.

Thereafter, Potter arranged a controlled buy. Potter testified that he provided the CI money for the controlled buy, drove the CI toward 110/112 Academy Avenue, dropped the CI off, and watched as he entered the residence via the left front door, which provides access to the second and third floor apartments. The CI exited approximately two minutes later and returned with a substance which was later confirmed to be cocaine. The CI stated that he had purchased the substance from Defendant in the second floor apartment and that Cole had also been present and had retrieved the narcotics from inside the apartment.

Potter prepared two search warrant applications for the first and second floor apartments at 110/112 Academy Avenue. The affidavit supporting the applications set forth the information detailed above regarding Potter's experience with the PPD, the receipt of information about Defendant and Cole from the CI, Potter's surveillance and investigation of

3

Defendant and Cole, and the execution of the controlled purchase. Of central importance to the motions before the Court, however, Potter's affidavit did not specify that the controlled purchase took place inside the second floor apartment. Instead, it described generally the purchase having taken place at 110/112 Academy Avenue. (See Affidavit, ECF No. 24-1) ("[T]he CI handed your affiant a quantity of cocaine which he/she stated that he/she had just purchased from Fahnbulleh while inside of 110/112 Academy Avenue. The CI further stated that Ebony Cole was also present in the apartment during the purchase of the cocaine and had retrieved the cocaine from within the apartment for Fahnbulleh.").

On October 3, 2013 a state magistrate judge issued two warrants to search the first and second floor apartments as well as Defendant and Cole for "[c]ocaine and any articles relating to the sale and or use of narcotics and any monies derived from the illegal sale of narcotics." (Search Warrant, ECF No. 24-1.) Potter and other PPD officers executed the warrants the same day. Arriving at 110/112 Academy Avenue, officers observed Defendant exit the residence and enter his vehicle. Officers followed Defendant as he drove to a car wash. There, Potter approached Defendant, identified himself, searched Defendant for contraband (finding none), advised Defendant of his

4

constitutional rights, handcuffed him and placed Defendant in a police vehicle.

PPD officers transported Defendant back to 110/112 Academy Avenue. En route, Defendant made statements indicating that he had a handgun in the apartment. During the ensuing search, detectives recovered a scale and bagging material, as well as the handgun that is the subject of the indictment.[2]

II. Discussion

Defendant seeks to suppress the handgun found during the search, as well as the incriminating statements made en route to 110/112 Academy Avenue. Though packaged as three separate motions, Defendant's arguments may be summarized as follows: with respect to the gun, Defendant contends that it must be suppressed because the underlying search warrant was not supported by probable cause based on Potter's failure to specify in which of the two apartments the controlled purchase took place. And, with respect to the statements, Defendant suggests

---

[2] The defense offered two witnesses. The first was Cole, who denied selling drugs and who testified that her niece, Shamika Cole ("Shamika"), who is pregnant with Defendant's child, resides in the second floor apartment. The second witness was Shamika. She testified that she resides in the second floor apartment and that the gun in question belonged to her. Though her testimony was evasive, Shamika stated that she acquired the gun from "Tiffany" in New Bedford, Massachusetts. When pressed, Shamika could not recall details about the gun, including its specific make and model. The Court finds that Shamika's testimony was not credible and that neither witness' testimony undermines the validity of the warrants.

5

that they were obtained subsequent to an arrest that was illegal by virtue of it having taken place without a warrant and without probable cause. Neither argument withstands scrutiny.

A. The Search Warrant

"Probable cause exists when the affidavit upon which a warrant is founded demonstrates in some trustworthy fashion the likelihood that an offense has been committed and that there is sound reason to believe that a particular search will turn up evidence of it or that the search will turn up contraband." United States v. Khounsavanh, 113 F.3d 279, 283 (1st Cir. 1997) (citations omitted) (internal quotation marks omitted). "[T]he warrant application must demonstrate probable cause to believe that a particular person has committed a crime – 'the commission element' and that enumerated evidence relevant to the probable criminality likely is located at the place to be searched – 'the "nexus" element.'" United States v. Zayas-Diaz, 95 F.3d 105, 110-11 (1st Cir. 1996) (quoting United States v. Fuccillo, 808 F.2d 173, 175 (1st Cir. 1987) cert. denied, 482 U.S. 905 (1987)).

The standard for assessing the sufficiency of an affidavit is whether the "totality of the circumstances" set forth demonstrates probable cause to search either the premises or the person. Khounsavanh, 113 F.3d at 283. "To establish probable cause for a premises search, the information available in the

6

affidavit must show 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

Viewing the totality of the circumstances, as the Court must, there was probable cause to support issuance of the search warrants, despite omission from Potter's affidavit of the fact that the controlled purchase took place in the second floor apartment. The magistrate judge saw information suggesting that Defendant and Cole used both apartments to facilitate the sale of narcotics and that a controlled purchase had taken place at 110/112 Academy Avenue from Defendant and Cole. The First Circuit has previously affirmed the denial of motions to suppress where the underlying affidavits did not specify in which apartment in a multi-unit building a controlled purchase took place. See Khounsavanh, 113 F.3d at 285-86; United States v. Garcia, 983 F.2d 1160, 1167 (1st Cir. 1993). As such, the Court declines to suppress the evidence in question.[3]

B. The Arrest

Relying principally on Bailey v. United States, 133 S. Ct. 1031 (2013), Defendant argues that his arrest was unlawful and that his resulting statements should be suppressed. Defendant notes that the warrants allowed officers to search the first and

---

[3] Even were the warrants not supported by probable cause, the Court finds that the good faith exception would preclude suppression. See United States v. Leon, 468 U.S. 897 (1984).

7

second floor apartments and Defendant's person.  But, he contends that officers could not lawfully arrest him at the car wash once a search of his person failed to uncover contraband.

In Bailey, police officers were preparing to execute a search warrant at the defendant's apartment when they observed the defendant leave the premises in an automobile.  They followed him, pulled him over, and arrested him.  The Supreme Court held that the ability to temporarily detain individuals during the execution of a search warrant applies only to those individuals immediately in or around the subject premises.  Id. at 1044.  Importantly, however, the Bailey court noted that some other rationale might exist that would permit the detention of an individual away from the subject premises.  Id.

Such is the case here.  PPD officers had probable cause to arrest Defendant at the car wash based on the recent execution of a controlled purchase of cocaine from him.  See United States v. Dixon, Criminal Action No. 11-10218-JLT, 2013 U.S. Dist. LEXIS 60627, at *11 (D. Mass. Apr. 29, 2013) ("Bailey has no relevance . . . .  This court need not consider whether Defendant's detention was justified as incident to execution of a search warrant because the officers had probable cause to arrest Defendant.").

III. Conclusion

For the foregoing reasons, the Court DENIES Defendant's Motion to Suppress (ECF No. 19), Motion to Suppress Evidence and Request for Franks Hearing (ECF No. 20) and Motion to Suppress Fruit of Illegal Arrest (ECF No. 22).


IT IS SO ORDERED.

/s/ William E. Smith
_____
William E. Smith
Chief Judge
Date: June 24, 2014